Our final case for the day is Foji v. Atlassian, No. 23-2107. Counselor Miyoki? Miyoki, Your Honor. Miyoki. Rhymes with Mr. Miyoki. I thought I was going to get it wrong. Miyoki. Get that letter and not open it up. Okay, you have five minutes of rebuttal, correct? That is correct, Your Honor. Okay, we're ready for you. May it please the Court. Again, my name is Joe Miyoki. I represent Appellant Foji, Inc. This Court should reverse the Board's final written decision for at least two separate reasons. First, the Board asserted that Atlassian advanced a single unaltered embodiment argument to satisfy the reasonable expectation of success component for obviousness. This was not so. Second, the Board applied an incorrect claim construction for insert the rich media data into the message while maintaining text flow. Stepping back, the Board incorrectly asserted that Atlassian advanced a single unaltered embodiment argument to satisfy the reasonable expectation of success requirement for obviousness. This single unaltered embodiment argument was never raised by Atlassian in its IPR petition. The argument was never raised by Atlassian in its IPR reply. The argument was never made or mentioned by Atlassian even during oral argument. Neither Atlassian nor the Board identified where in the petition the supposed single unaltered embodiment can be found. The argument is simply not there. This is not a case of reviewing the Board's interpretation of a petition argument under the abuse of discretion standard. The Board cannot interpret an argument that Atlassian never made. Instead, the Board must base its decision on arguments that were advanced by Atlassian. The Board is not free to adopt arguments for petitioners that were not raised. Instead, here we have an argument created by the Board on behalf of Atlassian for the very first time in its final written decision. This Court reviews de novo whether the Board improperly relied upon new arguments. That is exactly what happened here. So in this case, counsel, let's assume that we believe that Gura discloses a single embodiment. In that circumstance, what is your best case law support for your argument that there needs to be a discussion of reasonable expectation of success? Certainly. This comes right into this Court's decision of In re steppen, that even when an obviousness position is based upon one reference, a reasonable expectation of success is still a requirement when multiple embodiments are being combined at a minimum. Well, I just said assume it's a single embodiment, though. I'm sorry. I apologize. With that assumption, which we absolutely disagree would be the case here, if a single unaltered embodiment were involved, RES probably isn't a requirement, although not absolutely explicitly clear from this Court's precedent. What about three embodiments? Oh, if three embodiments were being combined from a single reference, it falls squarely within In re steppen, where reasonable expectation of success is absolutely a requirement to make out the prima facie case, and in footnote one of In re steppen, this Court explicitly rejected the dissent's position that reasonable expectation of success was not required. So, turning to the second fundamental ground for reversal, the Board incorrectly interpreted insert the rich media data into the message while maintaining text flow. Under proper claim construction analysis, the Board would have consulted the file history and the entire specification of the 149 patent. The Board did not do that here. Turning to the file history, when this claim language was added by amendment, FOGIE made the meaning clear and distinguished specifically the NAGLE reference stating, and I quote, NAGLE does not eliminate the need to stop typing the message. This is found at appendix 1153. In other words, while maintaining text flow means while typing continues. The Board has incorrectly framed the issue here in terms of obviating the need to attach images. The NAGLE reference I just mentioned uses a pop-up menu of images selected for insertion. What is your argument on whether GURA would disclose while maintaining text flow? GURA does not disclose while maintaining text flow because nothing in GURA discloses inserting the image or the rich media data while the user composes or types the message. And if we take a step back, you know, maybe coming up to a higher level, when the 149 patent in context of what GURA is doing, I'll start with GURA. GURA is explicitly stating that GURA pertains to SMS or short message syntax and MMS texting. Conventional text messaging that's been around for a long time in mobile phone and smart phones, that's been claimed in FOGE's 149 patent. The patent right out of the gate says that we are, this invention as claimed is an improvement over conventional SMS and MMS texting for the exact reason that in conventional MMS and SMS, users cannot insert a custom image while composing the message. Did you make this argument to the board that you're making right now? I believe we did, yes. Where did you make that argument? Do you remember the page site or something? It would have been right in our, if you bear with me for one moment. It would have been right in our, if you bear with me for one moment. I believe it's at, if you look at appendix 207, where we again start walking through the 149 patents discussion of the claimed media messaging platform. I believe in here we contrast in this portion with SMS and MMS. Does GURA disclose every element of the claimed invention? No. At a minimum, GURA does not disclose the while maintaining text flow limitation, nor the single message limitation. So if I step back at the outset, when issuing its claim construction for while maintaining text flow, the board never made any reference or addressed this discussion in the file history, the intrinsic record, the distinguishment over the NAGLE reference when the claim limitation of while maintaining text flow was inserted. Very notable here because this was the only claim amendment made. In addition to that, the board likewise never addressed specification excerpts referencing insertion that doesn't interrupt the user's texting flow or within the texting flow. This is found specifically in the 149 patent column 1, line 44, column 2, line 15, column 4, line 50. Nor did the board look at the discussion of insertion within the flow of the word-by-word writing process. Column 2, lines 1 and 2, insertion of the flow, I'm sorry, insertion within the flow of typing found at column 2, line 21, and also insertion described as immediate or instant found at column 2, line 13, column 4, line 65. All of these specification portions are, one, consistent with the file history, and two, completely supported by FOGE's construction. The board ignored all of this and instead interpreted figure 14 directly contrary to the specification. If we look at the 149 patent, the specification describes figure 14 in just one sentence, the only place where figure 14 is addressed in the specification, and it states, and I quote, referring to figure 14, an example of the plain text message and subsequent conversion of the parsed and rendered message incorporating photocons is depicted. That's found in appendix 42, column 9, lines 29 to 32. The specification thus states that figure 14 shows a singular message having plural images. In its final written decision, the board rewrote this portion of the 149 specification and stated that figure 14 showed separate messages plural, and this is very, very apparent if you turn to appendix 4, appendix page 4, where the board states figure 14 depicts, and it starts quoting from the 149 patent, plain text messages plural. Huge point here, the board adds the S in brackets, changing message from singular to plural. I'll continue. Plain text messages plural and subsequent conversion of the parsed and rendered messages. Again, the board changes the explicit text of the 149 specification from a singular message to plural messages, jumps right out through its use of the brackets with the S, incorporating photocons. Again, I encourage the court to look at appendix 4, where the board rewrote the description of figure 14 through these use of the bracketed S's to change a single message into plural messages. The board then relies upon only a portion of figure 14 to continue this revision and this interpretation of the specification. Again, stating at appendix 8, figure 14, and again, keep in mind they're showing only a portion of figure 14, figure 14 above shows the entire plain text message completed, as seen on the left, before the system inserts a rich media image, as seen on the right, appendix 8. Counsel, you're getting into your rebuttal time. Continue or save it. I will continue for just another moment. Maybe two moments. But the board used this rewritten and distorted interpretation of the 149 specification, figure 14, to permit after-the-fact insertion of rich media data to conclude that Fergie's construction was wrong. Nothing in the specification supports use of figure 14 to allow after-the-fact insertion. The board cited nothing that supports its incorrect construction to allow after-the-fact insertion. And stepping back, as this court is well aware, I note that interpreting figure 14, which is part of the intrinsic evidence, constitutes clean construction and is reviewed de novo. The board's construction violated several canons of clean construction and is erroneous. Fergie's construction is correct and should be adopted. Thank you. Mr. Day. Good morning, Your Honors, and may it please the Court. James Day on behalf of Appellee, Atlassian U.S. Incorporated. Let me start with the second issue, the claim construction issue. One of the things that my friend didn't mention and that the board focused on is the actual claim language in the 149 patent that frankly dictates the outcome on this case. Fergie argued that while maintaining text flow means that the media is inserted while the user is composing the original message, that's contradicted by the claim language as the board concluded below. What I'd like to do is make sure that this piece is clear because the claim language is the most important evidence for claim construction. If you look at Appendix 43, we can see Claim 1 of the 149 patent. It's composed of a couple of things. There's the communications system. There's a first user device, that's a cell phone, say. There's a second user device, that's the cell phone that's going to receive the message. Then there's what's called a messaging cloud. What the 149 patent talks about is you put this messaging cloud out in the cloud, in the internet, in the network between the two devices. Then that messaging cloud has something, go down to line 48, it has something called a messaging service. It's configured to perform a few steps. This is the messaging service. It's sitting out in the cloud. The first thing that it does is it receives a message. That message contains a rich media data request. That's a text-based tag or a shortcut. That might be a colon and a right parent for a smiley face. It's text-based. It's a request for rich media data. Then the messaging system retrieves from a database the image and inserts it into the message while maintaining text flow. What that means is it inserts it into the message at the point where that rich media data request was in the original text. Then the last thing that it does is it presents it to the second user. It sends it on to its destination. That's what the claim says. As the board found, the claim language contradicts the notion that the media is inserted while the first user is typing the original text message. What would be your definition of the phrase while maintaining text flow? I agree with the board, Your Honor. At the bottom of Appendix 8 and going on to 9, the board said, we agree with Petitioner that the ordinary and customary meaning of the phrase while maintaining text flow reads on automatically replacing a character string with an image located where the characters were typed in the message. While maintaining text flow means that you don't put the image at the end of the text. It's not an attachment to the text. It gets inserted where the characters were. It gets inserted automatically, so you don't have to stop typing. You're typing your message. It includes this emoticon, tag, shortcut, whatever you want to call it. It can happen in the cloud after the typing is done. But it does. That's the only way. The claim says it happens in the cloud. Are there other uses in this spec of the word flow? Well, Your Honor, I guess let me get on to the second point. It's a slightly odd expression. It feels temporal. You're not saying it's temporal. You're saying it's spatial in the lineup of the characters. It's not temporal. It's as the board found. It's automatically inserting the text or the image into the text message where the request for rich media data appears. That's clear. What happened in the file history is the applicants distinguished Nagel because in Nagel you'd have to stop typing and go to a menu in order to insert instead of continuing to type. What the patent talks about over and over again is that the images are inserted without the need to attach a file to the message. That's what we're talking about. Without interruption to while maintaining a text flow. With that amendment in mind, how do you then support up your proposed interpretation of while maintaining a text flow? If you want to talk about the file history, what happened is first the applicants amended the claim to say without interrupting. The examiner said, sorry, that's indefinite. The applicants made a single change to address the indefinite misargument and said instead they changed the words to be while maintaining text flow. Presumably they thought it meant the same thing. Then if you go to appendix 1153, well 1154 they say claims 112 and 17 have been amended to overcome the indefinite misrejection. If you look a few pages earlier, there's only one amendment. What they did is they replaced one phrase with another in order to make it definite, not to change the scope. Then on page 1153 they talk about Nagel. They distinguish Nagel first by saying Nagel does not eliminate the need to stop typing the message. In Nagel you would be typing along and you have to stop and open a separate window. You open a separate menu to select something to insert. They're saying that's different. Our invention is you just keep typing until you're done. Then you send it off to the cloud for insertion of the media. We know that's right because the next sentence, this is on page 1153, they say Nagel requires detecting gesture 20, that's a hand movement for example that generates additional screens. You're typing away, you do this hand movement, it brings up an additional screen. You have to go to that to select for example a location, etc. Then the next thing the applicants say is there's a quote from the specification where they say the invention is different because it allows mobile and tablet users to seamlessly integrate text, etc. Then at the bottom of the page it says without having to interrupt the mobile user's texting flow skipping the laborious step of attaching such rich media data into a mobile user's device. That's at the bottom of 1153 and then the first two lines of 1154. I would like to make, if I may, go back to the specification. One thing that caught my ear, you said that the first amendment that without interrupting text flow was met with a rejection by indefiniteness. That's correct, Your Honor. I guess I'm looking at 1103. Isn't that a rejection in part on the basis of Nagel, an obvious misrejection? I'm just confused about your point about indefiniteness. I'm looking at the wrong thing. What I'm pointing to, Your Honor, if I was walking through this, there was an amendment at 1080 that adds without interrupting text flow. There's a rejection at 1099. On 1101 there's at the top of the page it says claims 112 and 17 that recite without interrupting text flow. The limitation renders the claim indefinite. Then when we get to 1146, that's where there's an amendment to change that language to while maintaining text flow, presumably meaning the same thing but clarifying what they meant. 1152 says we made an amendment to address that rejection. 1153 is where we distinguish. I'm sorry I'm taking your time, but I'm back at 1101, right at the very top of the page, examiner's point number 6. In claim 112 and 7, limitation recites without interrupting text flow. That's indefinite. But then the examiner continues. And the examiner continues this whole subsection on 103 rejections and now claims 1 through 5, 8, 12 through 20, which includes everything, the 112 and 17. Osterman now back to 1103, Osterman does not explicitly disclose the without interrupting text flow. However, Nagel does. So what happened is there's this rejection based on Nagel, but also the indefiniteness rejection based on the words not interrupting text flow. So in the next response, the applicant said, okay, let's change the words in the claim to address this indefiniteness issue. And now let me explain to you why Nagel doesn't. And they actually repeat the does not interrupt the text flow. If you look at the argument, they use the wrong language, which suggests to me they thought the language meant the same thing. The point, though, is Nagel does not disclose, according to the applicants, what the claim says, because in Nagel you have to open this separate window. You can't just keep typing and then send your message off. So I think it's important to make a point that I want to get to on this, Your Honor, and that is in the reply brief, in the gray brief, there's this notion that it would be absurd if, to assume that the message is composed and the composer doesn't see the image that's going to be put in. But that's exactly what this invention is talking about. As I said, the claim language tells us that. The claim language says you send this message, all text based, up to the cloud. But the specification says the very same thing. And I think it's important to get to this. If we look at column four, line 29, there's this discussion of an MMP, a media messaging platform. It can send communications in these two different modes. One is a message, one is a text. It then says a message can be a HTML string, which is constructed by the sender using HTML format, that's text format. Receiver, so the person who receives it, will see them in traditional rich web format. The message, when it arrives at the receiver's environment, will be properly rendered by the web browser, etc. So it's a text that gets sent, and then the recipient sees the enhanced message. Let me ask you two questions before your time runs out. First question is, what is your response to opposing counsel saying that Gura does not disclose the two limitations that we've been talking about, the message one and the well-maintained text flow? That's the first question. And the second question I want you to get to is, I'm curious about on more of the reasonable expectation of success sort of related points. Why wasn't there like a 102? Like why wasn't there any anticipation argument made, and why was it also just strictly 103? Let me start with that, Your Honor. We didn't, I mean this was a strategic decision made at a point where we did not have claim constructions in the district court case, so we did not know how the plaintiff was going to construe. Claim one, in particular, actually has a lot of confusing aspects to it. It uses a term called semantic model that was added through an examiner's amendment at the very end. It's not defined. Specification uses the term, but really doesn't explain what it is. There's also a statement that says the database is the MMP, which is a confusing statement that we thought under 102 might be subject to arguments, not really based on the substance, but that might pose problems under 102. So we went with 103, because it's a little more flexible. We thought any distinction that they might draw between the semantic model in the 149 patent and what we pointed to in Gura would be an obvious distinction. It turns out they did not point out any distinction. In hindsight, at this point, having seen the distinctions the plaintiff tried to draw, we know Gura actually discloses every limitation and also anticipates. So that piece, the response on the other is, if you look at the board's construction of while maintaining text flow, it's based on the claim language, your honor. It does not mean while the user is composing the message. There's no explanation in this patent of how that could happen. The claim language would not permit it. The board found, appropriately, that what it means is the images are automatically inserted in line in the text, as I described, when they're delivered. That's what the claim language says. Gura does exactly that. There's no dispute on that point. Under the board's correct construction of while maintaining text flow, there is no dispute that Gura discloses. On the second claim construction issue, I don't actually think it's a claim construction, this one versus two messages. It's just, does Gura do what the claim language says? And Gura does exactly what the claim language says. If you look, it's actually the same language I pointed you to before. That messaging service that's sitting out in the cloud, I'm looking at appendix 43, and if you go down to line 48, again, there's this messaging service. Again, it's sitting out in the cloud. The first thing that happens out in the cloud is it receives a message, the message including a rich media data request. It receives a text-based message and it has a request to insert rich media. It refers to that as the message. The next thing it does is it retrieves the image or the message to the recipient. The words, the message, refer to this thing when it's all text-based and also after it has been modified slightly to include the rich media data. What's your best succinct response on why you think you don't need to discuss reasonable expectation of success when it's a single reference in terms of what you're using? Because the closest case is N. Ray Stepon. N. Ray Stepon says you have to be combining embodiments. We're not combining embodiments. We made the point in our reply brief below, it's appendix page 286. We cited Gura. We quoted Gura. We said Gura doesn't apply because it requires combining embodiments. There was no response to that. FOGI did not dispute that. At the point, and that's clear in the record, council admitted that at the end of the oral argument. If you look on page 13 in the final written decision, the bottom of the page, the board cites N. Ray Stepon, notes that it requires combining embodiments, and then the last two lines say, here, however, petitioner's arguments do not rely on combining embodiments from, sorry, combining elements from multiple embodiments of Gura. At the time that was written, that was our argument, and it was undisputed. It's not until we get to the appeal that we hear for the very first time, not even in those last few seconds of oral argument, the very first time we hear about any argument disputing what I just read is on appeal, and that's why we think there's a forfeiture problem here, Your Honor. The board never considered any counterargument to our undisputed statement that we were not relying on a combination of elements from multiple embodiments. All right, Counselor, we have your argument. Understood. Thank you all for your time. Your Honor, can I switch it back to three minutes? Make it count, right? Okay. Thank you, Your Honor. Wanted to address two points. Taking a step back, Counsel for Atlassian, number one, has still never explicitly identified what this supposed single unaltered embodiment from Gura is upon which Atlassian is relying. FOGI absolutely teed this issue up front and center in patent owners' response when teed up. Even when relying upon a single reference combining prior art elements, reasonable expectation of success is a requirement. In response, all Atlassian did was, again, continue to try and conflate the issue between enablement and reasonable expectation of success. Again, enablement, nothing to do with an obviousness argument. And then simply in passing say, in re step on doesn't apply, without ever explaining why. Well, I thought at least what I just heard now was he talked about in re step on in terms of when you're talking about combining multiple embodiments, right? Within a single reference even. What is your response to that? They did not distinguish in re step on. They have a parenthetical quoting the in re step on multiple embodiments. But if I take a step back from that, in Atlassian's opening petition, they explicitly rely upon two separate embodiments from Gura. At appendix 104, Atlassian refers to the figure two embodiment from Gura. The declaration of their expert, Dr. Surati, at appendix 1365, same thing, refers to the figure two embodiment. Then they separately refer to the figure three embodiment. Again, at appendix 1337 in the Surati declaration. And then moreover, in Atlassian's petition, they then make reference to a proving function, which they refer to as an optional embodiment. The petition nowhere at all makes clear Atlassian's somehow trying to explicitly rely upon just one single unaltered embodiment. They never asserted that. One last second point that I want to make very briefly is that when we turn to the 149 patent, going to the point that Counsel for Atlassian, I think he was, I believe, trying to assert that the 149 patent does not permit real-time insertion by the composer. As the composer's typing the message, when the composer inserts the rich media data, I heard Counsel for Atlassian say that there was no way the user composing the message could see those images apply on the fly. But that is belied by specifically in figure two. Figure two right here at reference number 111 that I've highlighted, prior to C. But this is absolutely showing that the user device 300 is in communication with the overall media messaging platform communication system. So it's in two-way communication. It's not this the user has to, you know, type out the text of the entire message before images get inserted. That's just not the case. Any further questions from the Court? No. We thank you for your argument. Thank you, Your Honor. That concludes today's arguments. If the Court stands in recess.